Staples, J.
This case brings before this court for the first time the question of the proper construction of an act passed February 27th, 1866, “to legalize the marriage of colored persons.” It is therein provided that *286 “where colored persons before the passage of this act shall have undertaken and agreed to occupy the relation to each other of husband and wife, and shall be cohabiting together as such at the time of its passage, whether the rites of marriage shall have been solemnized between them or not, they shall be deemed husband and wife, and be entitled to the rights and privileges, and subject to the duties and obligations of that relation in like manner as if they had been duly married by law, and all the children shall be deemed legitimate whether born before or after the passage of this act.” Code of 1873, ch. 103, § 4, p. 941.
It is insisted that the parties to this suit, although they were colored persons, and living together as man and wife at the time of the passage of the act, are not within the influence of its provisions, inasmuch as they were free before the war, and might have been lawfully married under the laws then in force; that the sole obj ect of this legislation was to provide a remedy for persons emancipated by the war,- who, being slaves, could not legally contract the marriage relation, and who, from want of proper information, even after freedom acquired, might not understand the necessity and propriety of so doing.
It must be admitted there is great force in this reasoning. There is no doubt that the legislature, in adopting this provision, had reference mainly to slaves emancipated by the war. But it is impossible to say that this was the sole purpose of the act. The words include all “ colored persons,” no matter how or when their freedom was acquired. When the legislature has used words of a plain and positive import the courts cannot put upon them a construction w'hich amounts to holding the legislature does not mean what it has actually expressed. Dwarris on Statutes, 181-4, 209, 204, 5 and 8; Floyd, trustee, v. Harding, 28 Gratt. 401.
*287 This very case, as will be hereafter seen, vindicates the wisdom and propriety of extending this provision to all classes of colored persons.
The next question is as to the character of proof requisite to show that the parties are within the statute. It has been very properly said it was not the intention of the legislature to force upon persons the relation of husband and wife against the consent of either. It must appear they have agreed to occupy that relation. The fact that they have so agreed is, however, not always susceptible of direct proof. The courts must, in many cases, infer it from the circumstances. It is not necessary that the parties shall have expressly agreed to live together as husband and wife. The agreement or understanding may be implied, as in other cases, from their conduct and declarations. In the present case there is no positive proof of an express agreement of the appellant and the appellee to occupy the relation to each other of husband and wife. But the circumstances tending to show an implied understanding of that sort are almost as satisfactory as the direct testimony of unimpeached witnesses to the fact. It appears that they lived together in the house of the appellant as early as the year 1852, and so continued down to November, 1868, when the appellant abandoned the appellee and intermarried with another woman. During that time the "appellee gave birth to ten-children—all of them by the appellant; never denied by him or questioned by any other person, so far as the record discloses, until, in 1868, the appellant, as a pretext, no doubt, for his contemplated abandonment, raised a question as to the paternity of a son then eleven years of age. It further appears that the appellant for many years prior to 1866 recognized the appellee as his wife, spoke of her as such to persons with whom he had dealings or with whom he was acquainted; the children were treated by him as his own; and in *288 every respect he conducted himself as if he had been the husband by the rites of matrimony duly solemnized. The mother and the sisters of the appellant visited the house and recognized them as husband and wife. One circumstance worthy of observation is that the appellee had been excluded from the Baptist church for some time previous to February, 1866, in consequence of her connection with the appellant. When the act already adverted to was passed by the legislature legalizing that connection, as was supposed, the appellee was restored to the church, and thereafter recognized as a regular member in good standing. The appellant, when informed of this matter, merely said he was not yet married ; but he continued to live with the appellee as his wife, so called her and uniformly recognized her throughout the years 1866-67 to November, 1868. These facts are proved by eight or nine witnesses, and in a manner carrying entire conviction of the truth of the testimony.
The appellant, on the other hand, has introduced two witnesses—neither his mother nor sisters, as might have been expected, nor even his neighbors and friends by whom he was surrounded. One of them is a white man, living at the time in the country, but who did business as a butcher in the same market with the appellant. All his information is derived from what the appellant told him at the market, and it is very apparent that much of the conversation occurred after the appellant had determined to abandon the appellee for the woman he wished to marry.
The difficulty with regard to both witnesses introduced by the appellant is that they prove too much, and most of their statements are in direct conflict with the well-established facts of the case. The appellant was examined as a witness in his own behalf. Without undertaking now to determine whether he is a competent witness, I think it is sufficient to say that no weight can be *289 attached to his testimony. He does not hesitate to make the most reckless assertions or denials, utterly inconsistent with his previous conduct for fifteen years and the whole tenor of the evidence. His deposition shows that he is either ignorant or regardless of the obligations of an oath. My opinion, therefore, is, that the circuit court did not err in holding that the appellee was, under the act of February, 1866, the lawful wife of the appellant at and after the passage of that act, and the appellant could no more release himself of the duties and obligations of that position by any act of his than he could if he had been legally united to the appellee by the rites of matrimony.
It seems, however, that since this appeal was taken the appellant has died, leaving a will, by which he devised his estate to his mother and an infant son, in whose names the appeal has been revived. The corporation court, by the decree of the 14th January, 1875, directed the appellant to pay annually to the appellee the sum of $300, in monthly instalments of $25, c-n the 1st day of each month, that sum being, in the opinion of the court, a sufficient maintenance and support for the appellee. The question is as to the effect of the death of the appellant upon this branch of this decree. Alimony is a proportion of the husband’s estate allowed to the wife for her maintenance and support during the period of their separation, and only continues with their joint lives. It ceases with the death of either of the parties. 2 Bishop on Marriage and Divorce, § 350. The death of the appellant, therefore, puts an end to the provision in favor of the appellee. It could not, however, affect her right to those instalments which, under" the decree of the court, accrued before the death occurred. ¡So far as these instalments are concerned, the affirmance by this court of the decree leaves the appellee in the same con *290 dition as if no appeal bad been taken. The record does n°t sh°w Ore date of the appellant’s death. The case therefore, be remanded to the corporation court of Norfolk with instructions to that court to ascertain the amount which had accrued at the death of the appellant, and so to modify its own decree as to require the payment of the same to the appellee out of the estate of the appellant.
The other judges concurred in the opinion of Staples, J.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, there is no error in the decree of the corporation court, &c. But it appearing that the appellant had died since this appeal was allowed, and the court being of opinion that the alimony decreed the appellee ceases with the death of the appellant, but that the appellee is entitled to so much of what was decreed her as accrued before the death of the appellant, it is therefore ordered and decreed that the cause be remanded to the said corporation court with instructions to ascertain the amount due the appellee at the death of the appellant, and so to modify its decree of the 14th January, 1875, as to require payment of said amount out of the estate of the appellant.
Decree affirmed.